Reed, P. J.,
delivered the opinion of the court.
Defendant in error brought suit before a justice of the peace against The Union Pacific Railway Company to collect the value of a mare alleged to have been billed by an engine of the company. The summons commanded the offi■cer to “ summon The Union Pacific Railway,” etc. A trial *185 was had, of which the following appears in the transcript of the docket of the justice of the peace: “ Defendant appeared by attorney F. E. Brooks; made objection to admitting any evidence in the case on account of insufficiency of the service, the name of the corporation being The Union Pacific, Denver and Gulf Railway. Plaintiff moved to amend to meet the defendant’s objection. Motion allowed and trial proceeded. After hearing all the evidence in the case, it is determined and adjudged that the plaintiff R. E. Perkins make of the defendant The Union Pacific Railway Company the sum of one hundred and fifty dollars, and costs of suit, taxed at $9.52.” From which an appeal was taken to the county court, where a trial was had to a jury, resulting in a judgment against the defendant for the same amount (,$150).
Upon the trial, after the jury were impaneled, counsel for the defendant moved the court to dismiss the action against appellant for want of jurisdiction; that the substitution by the justice of the peace upon the trial of appellant in place of The Union Pacific Railway Company did not confer jurisdiction.
2d. A motion to dismiss made by the defendant, because no service had ever been had upon the appellant.
3d. To dismiss because of insufficiency of the service of the summons.
4th. Objected to any evidence being received, because the record showed that appellant was never served with summons. Each of which was overruled by the court and an exception taken.
The attention of the court, in the trial before the justice of the peace, was called to the fact that the suit had been instituted against the wrong party, and service had upon the wrong party. Instead of dismissing the suit, the court attempted to rectify the error by substituting the proper defendant, proceeded to trial, and entered up judgment against a corporation that no suit was instituted against, no process issued, no service had, and no appearance entered.
Precisely the same thing was done in the county court. *186 The Union Pacific Railway Company and The Union Pacific, Denver and Gulf Railway Company are two separate and distinct corporations. Where the suit was instituted against The Union Pacific' Railway Company, and service had upon it, the court could no more acquire jurisdiction in the manner attempted than by substituting a neighbor by the name of Smith as defendant in a suit instituted against and service had upon Jones. This fact is urged for reversal of the judgment.
It is true that the justice of the peace had no jurisdiction of appellant, nor did the insertion of its name in the summons confer jurisdiction. Except by the acts of appellant’s attorneys, there could have been no jurisdiction. They appear to have participated in the trial representing appellant, but at the close of the trial, as shown by the transcript, no judgment was rendered against appellant. The judgment was against The Union Pacific Railroad Company. How appellant could appeal from such a judgment, and why it did so, are enigmas.
A bond was made, alleging a judgment against appellant, and it appeared by counsel and proceeded to trial. Instead of relying upon its defense of want of jurisdiction, by its appeal and participation in the trial it not only recognized the judgment, but waived its own contention.
It is true, also, that appellant was in the hands of a receiver appointed by the federal court, and its entire property in custodia legis. The receiver was not made a party. It is undoubtedly correct, as a legal proposition, that no valid judgment could be had without the receiver, and it is probably true that consent from the federal court should have been obtained, as it had full and complete custody; but in order to have been available, the matter should have been brought to the attention of the court in some manner that could legally present it as a defense. It appears that it was suggested to the court during the proceedings, and there the matter was dropped. Consequently there is nothing on that question presented to this court for review.
*187 The'plahitiff testified that the value of the animal alleged to have been killed was $150. Tim Perkins, a brother of plaintiff, testified: “ I think that a fair market value of this animal in her condition would be $150. * * * I know the reputed age of the animal. I presume she was ten or eleven years old.” There plaintiff rested.
Defendant called J. L. Williams, a lawyer, who sold the mare to the plaintiff. He testified: “ This Fox mare that was killed by the railroad I had owned eight or nine years when I sold her to Mr. Perkins, and at the time I bought her she was claimed to be seven or eight years old. * * * The cash market value of this mare in controversy — I do not know that she did have any; an animal of that description is hard to sell; I put her in the trade to Perkins at $30.00; before that I sold her once and bought her back for $25.00. * * * I think there were seven horses; there was a fixed value placed upon each one; the Fox mare was called $30.00; the value of all of them was called $200. * * * Mr. Perkins came to me one day and tried to get me to testify to a high valuation of this animal; he wanted that I should pedigree her, and I declined to concede to his terms. He said at that time that he wanted I should pedigree the mare, and I told him I could not do it.”
Defendant rested, when plaintiff, ostensibly for the purpose of rebuttal, again took the stand, but the only rebuttal was his statement that Williams told him that he had spent $300 in developing the speed of the mare. Williams’ statement was only, “I never knew she had any speed.” No one testified that she had. Speed, perhaps, in a younger animal might be an element of value if established ; but how proof of an expenditure of money to develop speed, which ended in failure, could be competent as proof of value, we are at a loss to understand.
The only evidence that might be possibly considered as rebuttal was that in the trade with Williams “ there was no specific value agreed for that one particular mare.” This does not rebut the testimony of Williams. He did not tes *188 tify to an agreed price. He said, “ I put her in trade to Perkins at $30.00.” Whether it was an agreed value or his own estimate does not appear.
Here also occurs the novel fact of a mare fifteen or seventeen years old improving by age.
“ Q. You may state the value of the mare at the time she was killed as compared to her value at the time you purchased her?” to which plaintiff answered, “I would consider her worth 50 per cent-more ; and then she was with foal, and in a great deal better condition.” In his former evidence, that she was in foal was given not as a fact, but as an opinion. The entire examination was objected to and exceptions saved.
John Lay, the horseman, was recalled, reiterated his former statement of value of $150, but qualified by the statements that she was worth that amount if in foal, and had the pedigree they claim. “ I know nothing of my own knowledge. I base my knowledge of the pedigree on what was told me.” No pedigree whatever had been established. Williams testified that the plaintiff tried to get him to testify to a pedigree to enhance the value, but he declined. Counsel moved to strike out the entire evidence, which was refused, andan exception taken.
One Charles Williams was called, and, over the objections of defendant, testified that to the best of his knowledge the mare was about twelve years old, and “s7ie ought to be worth $150.”
The admission of all the testimony as rebuttal was improper and erroneous.
For another reason the judgment should not be allowed to stand: The verdict was excessive ; no’t warranted by any evidence in the case ; based upon the hypothesis that the mare was younger than shown by the evidence; that she was in foal, which was based entirely upon supposition ; and upon speed and pedigree, which were shown to have been purely imaginary, if not inspired by the questionable attempt of plaintiff to enhance the value by such fictitious aids. The jury gave the highest amount claimed. Taking the uncon *189 tradicted testimony of the mare’s value at the time plaintiff got her, and his evidence that she was worth 50 per cent more at the time of her death, and we only have a value of $45.00, while Lay, the expert who testified twice to the same effect, admitted that if not in foal her value was only $100.
It is evident that the jury was misled by the error of the court in admitting rebuttal testimony, or that the verdict was the result of bias and prejudice. Whether by one or the other, or both, is immaterial. It was unwarranted by the evidence, and was at least twice as much as it should have been. At any rate, the judgment must be reversed and cause remanded for a new trial.
The judgment will be reversed and cause remanded.

Reversed.,